UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT COSEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-3990** |
| **MARLIN GUSMAN, ORLEANS PARISH CRIMINAL SHERIFF; J. HAM, MEDICAL ADMINISTRATOR** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER AND REASONS

This matter is before the Court upon consent of the parties pursuant to Title 28 U.S.C. § 636(c). The defendants, Orleans Parish Criminal Sheriff Marlin Gusman and J. Ham, have filed a **Motion for Summary Judgment (Rec. Doc. No. 32)** seeking dismissal of the plaintiff's medical indifference claims brought pursuant to Title 42 U.S.C. § 1983. The plaintiff has not filed an opposition to the motion.

On January 25, 2007, the undersigned conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 18. The plaintiff was sworn prior to testifying. The cassette tape of the hearing is being placed in the custody of the Court Recording Unit along with a copy of this Order and Reasons.

**I.     Factual Summary**

    **A.     The Complaint**

The plaintiff, Robert Cosey ("Cosey"), is incarcerated in the Winn Correctional Center in Winnfield, Louisiana. Cosey filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983, against Sheriff Gusman and J. Ham alleging that he received inadequate medical care while housed in the Orleans Parish prison system ("OPP").

Cosey alleges that, while housed in OPP, he suffered with persistent stomach pain until June 26, 2001, when he was moved from the Templeman Jail to the Medical Observation Unit ("MOU") in another part of the prison. While there, blood work was done which showed that he had Hepatitis C. He complains that he was not told if treatment was available or the extent of his disease. He states that he was discharged back to the Templeman Jail after only a short time.

He claims that, one month later, the pain worsened and he was vomiting. He alleges that he was sent the Medical Center of Louisiana at New Orleans ("MCLNO") (f/k/a Charity Hospital). He claims that the medical personnel, using a small camera in his stomach, found an ulcer. He was diagnosed with gastritis and Hepatitis C. He was returned to the jail with antibiotics.

Cosey alleges that from June of 2001, until the drafting of his complaint on August 6, 2005, he had only seen a doctor a few times. He claims that blood was drawn and the results of the blood tests were lost. He claims that no tests or liver panel study was ever done to check the progression of the Hepatitis C. He also was not given any therapy, such as interferon.

Cosey claims that, as a result of the indifference to his medical treatment by Gusman and Ham, the Hepatitis C progressed for four years unabated. He seeks monetary damages, including

future medical costs, punitive damages and injunctive relief in the form of an order for the prison to provide him with interferon.

**B.     The *Spears* Hearing**

Cosey testified that he was diagnosed in 1984 with Hepatitis C. He also sustained a back injury before his incarceration, for which he received therapy before he went to jail. He stated that he was not given any medical treatment for Hepatitis C or for his back problem while in OPP.

Cosey further stated that he suffered with severe stomach pain from 2001 to 2003 while in OPP. He was diagnosed with gastric ulcers. He claimed that his complaints were initially ignored by the medical staff. He was only seen by a doctor for an annual physical.

Cosey also stated that he sued Ms. Ham because her medical staff failed to provide him with care. He also stated that she too refused to talk to him about his complaints, although she was responsible for the medical department. Cosey testified that he sent a sick call request to Ms. Ham and she responded by referring the complaint to a unit doctor. Cosey claimed that he never saw the doctor. Instead, when he got worse, he sent another sick call directly to the prison doctor indicating that he was told by Ms. Ham that he would be seen. Cosey stated that he never saw the doctor. Instead, he was only seen by a screener who would decide whether he should see a doctor.

Cosey also stated that he filed administrative grievances and they were simply referred to the medical department. He would then be sent to the medical screener and not see a doctor. Cosey claimed that the screener always thought he was faking until he got very ill and was carried to the medical unit in October of 2003. Before that, the medical staff gave him Metamucil, which made his problem worse. He was then given liquid Maalox, which also did no good and left him in pain.

He also stated that, when he was finally taken to the Templeman medical unit, they sent him to MCLNO. While there, the doctors examined his stomach with a camera and found infections. When he returned to Templeman, he saw a doctor once, although he saw other medical staff frequently. He was placed on medication and has been without major stomach trouble since that time.

Cosey also testified that the OPP medical staff refused to give him tests or treatments for his Hepatitis C because the medication was too expensive. He claims that his liver is now deteriorating because he remains untreated. He also stated that he is now receiving regular liver counts because he is taking a medication for tuberculosis which requires it.

Cosey stated that he sued Sheriff Gusman because he hired the medical staff who were refusing to treat him in spite of the sick call forms and new my complaints. Cosey also stated that when Sheriff Gusman would walk through the jail, the Sheriff refused to talk to him or listen to his complaints. He also stated that Warden LeCour and the tier captains refused to let him address the Sheriff with his grievances.

Cosey testified that he is seeking monetary damages and instructions for the medical department to give him interferon for Hepatitis C. Cosey admits, however, that he is no longer housed in OPP. He stated that he was convicted of burglary and his 12 year sentence was vacated by the Louisiana Fourth Circuit Court of Appeal. He stated that he was supposed to be re-sentenced on September 9, 2005, but was evacuated after Hurricane Katrina. He claimed that he was being housed in Winn Correctional Center waiting to be recalled for formal sentencing.

## II.  Standards of Review

### A.  Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

### B.     Inadequate Medical Care Claim

In considering the degree of medical care due prisoners, federal courts apply the same standard to both arrestees and pretrial and convicted inmates. *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996). The standard of conduct imposed on defendants with respect to the medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 97, 104; *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (*quoting Estelle*, 429 U.S. at 104); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999). Section 1983 permits recovery for serious physical harm "only where the defendant acts intentionally" or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. *See Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992) (citing *Canton v. Harris*, 489 U.S. 378, 388-390 (1989)) (discussing deliberate indifference standard in Fourteenth Amendment municipal liability, police denial of medical treatment case). The Supreme Court defined the "deliberate indifference" to mean that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *Stewart*, 174 F.3d at 534; *Reeves*,

27 F.3d at 176; *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Bradley*, 157 F.3d at 1025.

In some circumstances, even a delay in providing needed medical treatment may amount to a constitutional violation. *See Benson v. Cady*, 761 F.2d 335 (7th Cir. 1985); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir. 1981). However, the delay must be caused by the defendant's deliberate indifference if it is to rise to the level of a constitutional violation. *See Estelle,* 429 U.S. at 104-05.

Therefore, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104. However, a complaint that a physician, medical care provider, or other official has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id*.

Furthermore, an inmate's disagreement with his medical treatment does not give rise to a constitutional claim under § 1983. *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir.1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action

7

under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

### III.   Analysis

The defendants argue that they are entitled to judgment as a matter of law because the medical records from OPP demonstrate that Cosey received adequate medical attention for his medical complaints during his incarceration. They also argue that the medical records and physician's affidavit, referenced in the motion, establish that Cosey was not entitled to treatment for Hepatitis C while in OPP.

Although Cosey has not filed an opposition, the Court must still consider whether the defendants have met their burden under Fed. R. Civ. P. 56. "[B]efore the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000).

In the instant case, the defendants motion is replete with arguments tending to show that Cosey received medical attention and that he cannot show an intentional indifference to his serious medical needs. However, in spite of the references to medical records and affidavits, the defendants failed to submit any attachments, medical records or affidavits, to support their motion.

As the party moving for summary judgment, Gusman and Ham had the responsibility for bringing forward that documentation to establish that no genuine issue of fact exists for trial. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1274 (5th Cir. 1994); *Celotex Corp.*, 477 U.S. at 323 (explaining that the party seeking summary judgment always bears the initial responsibility of demonstrating to the district court the absence of a genuine issue of material fact, even when the

non-movant bears the burden of proof at trial); *Russ v. Int'l Paper Co.*, 943 F.2d 589, 592 (5th Cir.1991) (noting that the movant must satisfy its obligation that there are no fact issues warranting trial before the non-movant is required to produce any evidence in opposition to the summary judgment motion). On a more basic note, the Local Rule 7.4 of this Court also require that Gusman and Ham provide these documents as support for their motion:

> If the motion requires consideration of facts not appearing in the record, the movant shall also file with the clerk and serve upon the opposing counsel a copy of all documentary evidence he or she intends to submit in support of the motion.

The defendants failed to do this. Without evidentiary support for the motion, the defendants have failed to meet their initial burden of proof under Fed. R. Civ. P. 56 to show a lack of genuine issue of fact for trial. The motion for summary judgment must be denied. Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. No. 32)** filed by the defendants, Orleans Parish Criminal Sheriff Marlin Gusman and J. Ham, is **DENIED**.

New Orleans, Louisiana, this \_\_\_12th\_\_\_ day of September, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**